PENNER, Receiver, Appellant, vs. MUELLER and another, Respondents.

*January 10—April 3, 1934.*

For the appellant there were briefs signed by *Upham, Black, Russell & Richardson,* and oral argument by *Clark M. Robertson* and *Fraley N. Weidner,* all of Milwaukee.

For the respondents there was a brief by *Zimmers, Jaekels & Zimmers* of Milwaukee, and oral argument by *William J. Zimmers* and *Ray Jaekels.*

The following opinion was filed February 6, 1934:

WICKHEM, J.   This case involves two questions, which are entirely distinct and must not be confused: First, was the assignment of the life insurance policy a transfer fraudulent as to creditors of the Paul E. Mueller Company? Second, assuming that it was not, does it fall within the class of transactions described in *Federal Mortgage Co. v.*

*Simes,* 210 Wis. 139, 245 N. W. 169, as voidable by the corporation, without regard to fairness, and may the receiver disaffirm the transaction? Coming to the first question, certain conclusions are not in serious doubt. The corporation had a right to discontinue this insurance and the creditors could not complain. The only property in the policy available to creditors at the time of assignment was its cash surrender value. An assignment of the policy by the company, in consideration for which it received the full cash surrender value, would not be fraudulent as to creditors, unless there were other facts, not disclosed by the record, which indicated a fraudulent purpose.

The sole question here is whether the company was paid the full cash surrender value in consideration of the assignment. There is a great deal of evidence addressed to the questions whether the Paul E. Mueller Company was insolvent at the time of this assignment, and whether Mueller, upon a proper accounting, owed the company money or was owed money by the company. The answer to neither question is material if the evidence supports the finding of the trial court that on or about the time of the assignment, and in consideration therefor, Mueller paid to the company the cash surrender value of the policy. The fact that Mueller, at or about the time of the assignment, paid into the company the sum of $8,000 is not denied. The bookkeeper was sick at that time, and a written memorandum was placed in the books by Mueller, addressed to the bookkeeper. This read as follows:

"Chris: Since you were laid up you will notice on list of receipts that I paid $8,000 into the business. This pays for corp. Life Insurance Policy No. 587917 which I purchased at the cash surrender value of $4,843 as per resolution in the minute book. The difference of $3,157 *credit me, Notes Payable account.*

"PAUL E. MUELLER."

It is contended by plaintiff that according to this note the cash surrender value is stated to be $4,843, whereas in fact it was $5,025.70. From this it is claimed that at all events Mueller purchased the policy for less than the cash surrender value. This contention might have some force had Mueller paid but $4,843 to the company at this time, but the fact is that he paid $8,000 into the company, stated that he had purchased the policy at its cash surrender value, and directed that the surplus be credited to him upon the books. Under these circumstances it is clear that he intended to, and did in fact, pay the full cash surrender value of the policy, and that his directions as to the bookkeeping credit were erroneous, due to a confusion between the cash surrender value and the loan value of the policy. It is our conclusion that the evidence amply supports the finding of the trial court that this was an assignment for a present consideration; that the company received the full value of the policy, and the fair equivalent of all the property then represented by the insurance policy and available to creditors.

It is next contended that, assuming this transaction to have been valid as to creditors, it was nevertheless voidable by the corporation without regard to its fairness, and that the receiver may exercise the right of the company to disaffirm the transaction. In *Federal Mortgage Co. v. Simes, supra,* this court stated:

"It is one thing for a stockholder or director to deal with a corporation in a transaction in which he does not represent the corporation. Even in such cases the transaction will be closely scrutinized to see that no advantage has been taken of the corporation. But quite a different principle applies where a director represents both himself and the corporation in such a transaction. In the latter situation it does not matter whether the transaction results in injury to the corporation or not. In all such cases the contract is

voidable on the part of the corporation simply because of the dual interest of the director."

It is claimed that this assignment falls into the second class of transactions held by the *Federal Mortgage Co. Case* to be voidable by the corporation without regard to fairness. This contention is based upon the fact that Paul Mueller, the assignee, was president of the corporation; that the defendant Rose Mueller was vice-president; that the defendant Louis Mueller was secretary and treasurer, and that it is obvious that the officers and directors represented both themselves and the corporation in consummating the assignment. The difficulty with plaintiff's position is that, assuming that this transaction falls within the class of cases held by the *Federal Mortgage Co. Case* to be voidable, it is clear from the opinion in that case that the unanimous affirmance of such a contract by the stockholders would render it valid. In the Mueller corporation, the directors and officers who participated and assented to this transaction constituted all of the stockholders. It is evident that the transaction, having been assented to by all of the stockholders, is not voidable by the corporation. This being true, the receiver cannot assert rights that the corporation itself does not have. He is limited to setting aside such transactions as are in fraud of creditors, and since we conclude that the evidence sustains the finding that this transaction was not a fraudulent conveyance, it follows that the judgment must be affirmed.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on April 3, 1934.